**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERESA ANN WHITE, | ) | |
| | ) | CASE NO.  3:13-cv-02106 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Teresa Ann White ("White") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

## I.  Procedural History

On August 18, 2010, White filed an application for POD and DIB alleging a disability onset date of June 16, 2010.  (Tr. 119.)  Her application was denied both initially and upon reconsideration.  *Id.*

On April 17, 2012, an Administrative Law Judge ("ALJ") held a hearing during which White, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 119.)  On May 16, 2012, the ALJ found White was able to perform a significant number of jobs in the

national economy and, therefore, was not disabled.  (Tr. 134-25.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age forty-seven (47) at the time she filed her application and age forty-nine on the day of the ALJ's decision, White was a "younger" person under social security regulations.[1]  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  20 C.F.R. § 416.963(c).  White has a high school education and past relevant work as a packager.  (Tr. 133-34.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

---

[1]  The ALJ incorrectly noted that White had transitioned to the "closely approaching advanced age" category.  (Tr. 133.)

[2]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

White was insured on her alleged disability onset date, June 16, 2010 and remained insured through the date of the ALJ's decision, May 16, 2012. (Tr. 121.)  Therefore, in order to be entitled to POD and DIB, White must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found White established medically determinable, severe impairments, due to degenerative disc disease, fibromyalgia, arthritis, chronic obstructive pulmonary disease ("COPD"), osteoarthritis, depression, and panic disorder.  (Tr. 121.)  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 122.)  White was found incapable of performing her past relevant work (Tr. 133), but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 124.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that White was not disabled.  (Tr. 134-35.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

4

## VI.  Analysis

***Treating Physician***

White argues the ALJ erred by failing to follow the treating physician rule and rejecting the opinions of her treating physician, Hagusat Oni, D.O.  (ECF No. 13 at 13-16.)  The Commissioner disputes that Dr. Oni qualified as a treating physician at the time he completed the relevant assessment.  (ECF No. 14 at 13.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[3]

If it is determined that a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers*, 486 F.3d at 242 (quoting

---

[3] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

White asserts that Dr. Oni's September 29, 2011 assessment was not ascribed appropriate weight as that of a treating physician. (ECF No. 13 at 10-15.) In a "Basic Medical" form

6

provided by Ohio Job & Family Services, Dr. Oni described White's medical conditions as including COPD, fibromyalgia, depression, rheumatoid arthritis, gastroesophageal reflux disease ("GERD"), morbid obesity, chronic low back pain, tobacco abuse, sleep apnea, chronic "B/C limb pain," and abnormal Pap smear.  (Tr. 597-98.)  Where the form asked for physical, psychological and/or psychiatric findings, Dr. Oni wrote "See office notes from Dr. Wolf – orthopedic surgeon."  *Id.*  Dr. Oni opined that White could stand/walk less than two hours in an eight-hour workday and less than one hour without interruption.  (Tr. 598.)  He further indicated that she could stand for less than three hours in an eight-hour workday and less than two hours without interruption.  *Id.*  She could lift/carry 11-20 pounds frequently and 21-25 pounds occasionally.  *Id.*  Dr. Oni noted that White's abilities to push/pull, bend, reach, and handle were moderately limited.  *Id.*  Where the form asked what observations and/or medical evidence supported these findings, Dr. Oni again referred to Dr. Wolfe's notes.  *Id.*  Finally, Dr. Oni opined that White was unemployable and that her limitations were expected to last twelve months or more.  *Id.*

The ALJ ascribed little weight to this assessment as it "was based on Dr. Wolfe's independent examination," was "not fully supported by the other evidence in the record," and was "even more restrictive than Dr. Wolfe's opinion."  (Tr. 132-33.)  Finally, the ALJ observed that Dr. Oni did not appear to have reviewed White's other medical records and further noted that Dr. Wolfe's examination relied almost exclusively on White's subjective complaints.  *Id.*

The question remains whether Dr. Oni qualified as treating source under Social Security regulations, which define a "treating source" as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for

7

> treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. §§ 404.1502 & 416.902.

In a similar case, the Sixth Circuit, in *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005), found that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as a treating source.  The *Daniels* court found as follows:

> Daniels next argues that Dr. Pinson's opinion was not afforded deference by the ALJ. ***  The ALJ's opinion referred, in passing, to Dr. Pinson as a treating source or treating physician, thus adopting Daniels's own characterization of Dr. Pinson. ***  We conclude that the treating source regulations and *Wilson* are not implicated by the facts of this case.  The ALJ's failure to specifically address Dr. Pinson's opinion, despite casually referring to her as the treating source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician.  The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant.  20 C.F.R. § 404.1502. The Commissioner will consider a claimant to have an ongoing treatment relationship when "the medical evidence establishes that [the claimant] see[s], or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.*  A physician who has treated a patient only a few times may be considered a treating source if that frequency of visits is appropriate for the claimant's medical condition. *Id.*  In this case, Dr. Pinson saw Daniels on two occasions, November 13, 2001, and November 16, 2001.  Daniels, however, sought treatment for his back pain on many more occasions than these two visits, including six visits to the emergency room and several other visits to King's Daughters' Outreach Center. Daniels's two visits to Dr. Pinson within the span of a few days is not a frequency consistent with the treatment of back pain, as evidenced by the fact that he received treatment from other sources on many other occasions.

*Daniels*, 152 Fed. App'x at 489-91 (footnotes omitted); *accord Hickman v. Colvin*, 2014 U.S. Dist. LEXIS 82914 (M.D. Tenn. June 18, 2014) ("Precedent in this Circuit suggests that a physician who treats an individual only twice or three times does not constitute a treating source."); *Hakkarainen v. Astrue*, 2012 U.S. Dist. LEXIS 16431 (N.D. Ohio Jan. 19, 2012); *see also Taylor v. Astrue*, 245 Fed. App'x. 387, 391 (5th Cir. 2007) (two visits to doctor did not establish a treating relationship).

The record reveals that White was first seen by Dr. Oni on August 31, 2011 – less than one month before the Basic Medical form was completed.  (Tr. 606.)  It is unclear whether White

8

was seen by Dr. Oni on September 9, 2011, the date the Basic Medical form was submitted. White's brief and reply do not point to any prior treatment with Dr. Oni aside from the single visit recorded in August of 2011.  (ECF Nos. 13 & 15.)  One visit does not establish a treating relationship.  In her reply brief, White does assert that she continued to see Dr. Oni.  (ECF No. 15 at 1.)  However, White's subsequent visits to Dr. Oni that postdate the September 2011 assessment are irrelevant in determining whether that opinion was from a treating physician **at the time it was completed**.  "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician at the time he rendered his opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 506 (6th Cir. 2006) (emphasis added).  In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that subsequent visits to a physician after the RFC assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *accord Thompson v. Astrue*, 2011 U.S. Dist. LEXIS 84542 (N.D. Ohio, Aug. 2, 2011).  The *Kornecky* court also explained that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others.  *Id.*

> As noted in *Kornecky*, the relevant inquiry is not whether Dr. Myers might have become a treating physician in the future if Plaintiff visited him again.  *Kornecky*, *supra*, at 506 (quotations omitted).  **The question is whether Dr. Myers had an ongoing relationship with Plaintiff to qualify as a treating physician at the time he rendered his opinion**.  *Id.*  Indeed, the treating physician doctrine is based on the assumption that a medical professional has dealt with a claimant and his condition over a long period of time will have a deeper insight into the medical condition than a person who has examined a claimant but once.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (quotations omitted).

*Beauchamp v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 37456 at *27 (N.D. Ohio Mar. 21, 2014) (emphasis added).

The Court declines to find that White had established a treating physician/patient relationship at the time Dr. Oni completed the Basic Medical form.  In addition to the lack of any meaningful frequency of treatment that would satisfy the regulatory definitions, it is also telling that Dr. Oni appeared to rely on Dr. Wolfe's treatment notes in his assessment rather than his examination.  Because Dr. Oni was not a treating physician at the relevant time, the ALJ was not

9

required to set forth good reasons for rejecting his opinion. As such, White's assignment of error is without merit.

***RFC Determination***

In another assignment of error, White argues that the ALJ's determination that she could perform a limited range of light work was not supported by substantial evidence. (ECF No. 13 at 8-13.) Specifically, White argues that none of the opinions from examining physicians support such a finding. *Id.* White, however, fails to cite any law on this issue.

A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. §§ 404.1545 & 416.945 *et seq.*; SSR 96-8p, 1996 SSR LEXIS 5. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. *Id.* The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." Reynolds v. Comm'r of Soc. Sec., 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. App'x. 149, 2009 WL 2514058 at * 7. Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

10

The ALJ found that White could perform light work, which included the ability to lift/carry up to twenty pounds occasionally and ten pounds frequently; push/pull to the same extent with hand or foot controls; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; and, frequently kneel, crouch, and crawl.[4]  (Tr. 124.)  In addition, the RFC prohibited concentrated exposure to fumes, odors, dust, gases, and poor ventilation.  *Id.*  Also included were some non-exertional limitations based on White's mental impairments, the sufficiency of which she does not explicitly challenge.  *Id.*  While White asserts that the record reveals "no support for the ALJ's findings," she fails to explain which portions of the RFC are unsupported by substantial evidence.  She primarily complains about the weight ascribed to the opinions of non-treating, examining physicians Sushil M. Sethi, M.D., and John S. Wolfe, M.D.[5]  (ECF No. 13 at 10-13.)  The opinions of those doctors addressed White's physical functional limitations.  (Tr. 586-590, 592-594.)  As such, the Court will focus on whether substantial evidence supports the physical components of the RFC.

The Court disagrees with White's assertion that there is no medical evidence supportive of the RFC determination.  The ALJ expressly assigned great weight to the State Agency medical consultants, who reviewed White's medical records including those provided by White's treating physicians.  (Tr. 132.)  The medical consultants, specifically Nick Albert, M.D.,

---

[4]  The Court notes that inherent in the ability to perform light work is the ability to perform "a good deal of walking or standing, or when it involves sitting most of the time...some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) & 416.967(b).  Heavy work requires six hours of standing or walking in a workday.  Social Security Ruling ("SSR") 83-10.  Sedentary work requires no more than two hours of standing or walking in a workday. SSR 83-10.  Thus, it appears that light work requires between two to six hours of standing and walking in a workday.  *Id.*

[5]  White's argument is also based on the rejected opinion of Dr. Oni.  *Id.*  As discussed above, Dr. Oni was not a treating source and the ALJ was not required to give good reasons for rejecting his opinion.  It follows that the ALJ need not incorporate the rejected limitations into the RFC.

11

assessed physical functional limitations that mirror the RFC ultimately adopted by the ALJ.[6]

(Tr. 92-94, 107-109.)   The Court is rather perplexed by White's assertion that the opinions of

the State Agency medical consultants "are not opinions of doctors."  (ECF No. 13 at 9, 12.)

White's follow-up assertion – that the ALJ deprived her of an impartial adjudication by ascribing

great weight to these opinions – is unsupported by any citation to applicable laws or regulations.

(ECF No. 13 at 9.)  The regulations suggest to the contrary, unequivocally stating that an ALJ

*must* consider such opinions, along with the opinions of the other medical sources of record:

> 2) Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law.  They will consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts as follows:

> (i) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  **State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must consider findings and other opinions* of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence**, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

> * * *

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2) (emphasis added).

The ALJ's consideration of the State Agency medical consultants' findings was

appropriate.  He discussed all the medical opinions of record, but ascribed the greatest weight to

---

[6]  White's functional limitations based on her mental impairments were assessed by medical consultant Patricia Semmelman, Ph. D.  (Tr. 94-96, 109-111.)  Dr. Semmelman opined that White had no more than moderate limitations in seven areas of functioning and no significant limitations in the remaining ten areas.  *Id.*  She explained that White could "perform tasks in a static environment with infrequent changes in job responsibilities and no demands for high production."  (Tr. 95, 110.)  In this Court's view, these limitations are not inconsistent with the mental components of the RFC finding.

those of the State Agency medical consultants. While White clearly believes that greater weight should have been ascribed to the more restrictive opinions of Dr. Sethi and Dr. Wolfe, that alone does not render the RFC unsupported by substantial evidence. *Key*, 109 F.3d at 273 ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.")[7]

Based on the above, the Court finds White's argument that the RFC determination was not supported by substantial evidence lacking in merit.

**Remaining Arguments**

White also argues that the VE's testimony was given in response to an inaccurate hypothetical question and, therefore, the ALJ's reliance on the VE's testimony was misplaced. (ECF No. 13 at 16-17.)

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). A hypothetical question is not erroneous where at least one doctor substantiates the information contained in the question. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*).

This claim is merely a continuation of White's previous arguments that the RFC determination was unsupported by substantial evidence and that the ALJ should have adopted the opinions of Dr. Oni, Dr. Sethi, and Dr. Wolfe. Because those arguments were found to be without merit, the ALJ was under no obligation to include the rejected limitations in the

---

[7] The Court does not construe White as arguing that the ALJ erred by ascribing greater weight to the opinion of a non-examining physician than an examining one. Her brief does not clearly raise such an argument, it does not cite any applicable law on the issue, and it plainly focuses on the issue of whether substantial evidence supports the RFC. (ECF No. 13.)

hypothetical.  Where a VE's answers are given in response to a hypothetical question that incorporated those limitations which the ALJ found to be substantiated by the evidence of record, the ALJ could justifiably rely on the VE's testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 781 (6th Cir. 1987); *Marziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240 (6th Cir. 1987); *accord Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x. 719, 730 (6th Cir. 2013) (finding that an ALJ was not required to rely on a VE's response to a question based on limitations that she rejected).

White's attorney had ample opportunity to cross-examine the VE at the hearing.  (Tr. 29-30.)  The ALJ heard the VE's testimony and determined that it reliably set out the types and availability of jobs White could perform.  Therefore, there was substantial evidence to support the ALJ's finding that a person with White's limitations was able to perform a significant number of jobs in the national economy.

Finally, the Court notes that there appear to be a number of undeveloped "arguments" in White's brief.  In one sentence, White complains that it was unclear why the ALJ ascribed greater weight to Dr. McIntyre's December 2010 opinion than to his November 2011 opinion.[8] (ECF No. 13 at 13.)  It is not this Court's function to develop additional arguments on a plaintiff's behalf.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

Likewise, White spends a brief paragraph suggesting that the ALJ's credibility finding was "absurd."  (ECF No. 13 at 11-12.)  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable

_____

[8]  As a matter of fact, the ALJ explained that Dr. McIntyre's later November 2011 opinion was "not fully supported by the medical evidence in the record" and was based on an uncritical acceptance of White's self-reported limitations.  (Tr. 133.)

deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96–7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[9] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross,* 373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

While White plainly disagrees with the ALJ's credibility determination and believes she should have been found credible based on her work history, expressing displeasure with said determination does not sufficiently raise such an argument, especially where a claimant is not proceeding *pro se*.

Finally, White takes issue with the ALJ's statement that the assessment of Dr. Wolfe relied almost exclusively on her subjective complaints. (ECF No. 13 at 15.) Again, White fails to develop any meaningful argument, and simply refers the Court to her discussion of the medical records earlier in her brief. *Id.* Even if the Court were to conclude there was evidence

---

[9] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

capable of supporting the doctor's functional assessment, it is unclear as to how such evidence would be demonstrative of error.  As stated above, even if there exists evidence that could support the opposite conclusion, the decision of an ALJ must stand "if the evidence could reasonably support the conclusion reached."  *Her*, 203 F.3d at 389-90.  White has failed to establish that the ALJ's finding was untenable given the evidence of record.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White_____
United States Magistrate Judge

Date: July 21, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**